## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL PEPOSHI,<br>      Petitioner | : | No. 3:26cv912 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG A. LOWE, in his official | : | |
| Capacity as the Warden of the | : | |
| Pike County Correctional Facility; | : | |
| and JOHN E. RIFE, in his official | : | |
| Capacity as Philadelphia acting | : | |
| Field Office Director for U.S. | : | |
| Immigration and Customs | : | |
| Enforcement, | : | |
|       Respondents | : | |

## <u>MEMORANDUM ORDER</u>

Before the court is a motion to enforce filed by Petitioner Samuel Peposhi. The petitioner is an immigration detainee in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Pike County Correctional Facility ("Pike CCF"). Peposhi was previously granted habeas relief in the form of a bond hearing before an immigration judge ("IJ") in the Department of Justice's Executive Office for Immigration Review ("EOIR"). The IJ determined that the petitioner was a flight risk and denied bond. Peposhi's motion to enforce asserts that he experienced a constitutionally deficient bond hearing. He argues, in essence, that the IJ was not neutral and impartial and that he received a "one line, pro forma denial." (Doc. 9 at 2–3).

After review, and for the reasons set forth below, Peposhi's motion to enforce will be denied.

**Background**

The petitioner is a native and citizen of Albania. (Doc. 1, Pet. ¶17). He is approximately 23 years old. (Doc. 4-2, I-213 Form). He entered the United States on September 17, 2024 at the Southern Border near Tecate, California and was promptly arrested by United States Border Patrol. (Doc. 4-3, Notice to Appear). U.S. Customs and Border Protection issued the petitioner a Notice to Appear charging him under 8 U.S.C. § 1182(a)(6)(A)(i) as being present in the United States without being admitted or paroled. Id. Peposhi was released on his own recognizance with directives to report to ICE on a scheduled basis. Petitioner was then arrested when he reported to the Philadelphia ICE Enforcement and Removal Office on January 9, 2026. He has been in ICE custody since that time.

On April 9, 2026, Peposhi filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). By way of a prior memorandum and order, the court granted Peposhi's petition. Peposhi v. Lowe, No. 3:26CV912, 2026 WL 1284859, at *4 (M.D. Pa. May 11, 2026). Without getting into the granular details, the court determined that Peposhi's detention was governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A) as the government had argued, and that petitioner

2

had experienced a violation of his procedural due process rights by being detained without a bond hearing. Id. at *2–4.

Habeas relief was granted in the form of a bond hearing with a neutral IJ. Id. at *4. To remedy the due process violation, the burden was placed on the government to justify detention by clear and convincing evidence. In doing so, the court relied upon the reasoning in German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020).

Subsequently, IJ Corey Combs conducted a bond hearing on May 22, 2026. IJ Combs denied bond, indicating that "[t]he [d]epartment has met their burden in demonstrating that the respondent is a flight risk."[1] (Doc. 9-1, Pet. Ex. A.).

Peposhi seeks release from detention through his motion to enforce. Respondents counter that the court lacks jurisdiction to hear Peposhi's motion. The government also argues that petitioner failed to administratively exhaust his claim by not appealing the IJ's determination to the Board of Immigration Appeals. In the alternative, the government asserts that, based on the record of proceedings, the petitioner received a fair and adequate bond hearing.

---

[1] The petitioner in this case is the respondent in proceedings before the EOIR.

**Jurisdiction**

Generally, the court has jurisdiction over habeas petitions pursuant to 28 U.S.C. § 1331 and § 2241(a).  Respondents challenge jurisdiction, citing 8 U.S.C. § 1226(e).  Under the statute, "[n]o court may set aside any action or decision by the Attorney General under this Section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Two strands of authority prevent the court from summarily denying Peposhi's motion for lack of jurisdiction.

First, the court may consider Peposhi's filing as a motion to enforce a conditional grant of the habeas writ.  Conditional writs accommodate governments.  That is, a court may hold that some infirmity justifies relief but may also provide the government with a time window to cure the error.  See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citing Satterlee v. Wolfenbarger, 453 F.3d 362, 369 (6th Cir. 2006) and Phifer v. Warden, 53 F.3d 859, 864–65 (7th Cir. 1995)).  In such scenarios, district courts maintain continuing jurisdiction to address alleged noncompliance with a conditional writ.  Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citing Phifer, 53 F.3d at 865; Mickens–Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir. 2004)); see also Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011) (explaining that an immigration detainee was "correct that the district court had authority to review

4

compliance with its earlier order" directing that the detainee receive a bond hearing before an immigration judge); Shonhai v. Lowe, No. CV 3:24-229, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (Mannion, J.) (collecting district court cases).

The court's prior order directed the respondents to provide Peposhi an individualized bond hearing within 14 days in accordance with the analysis in the accompanying memorandum. The court also ordered Peposhi released if he did not receive a bond hearing within the 14-day period.

Assume that the respondents did not comply with the second condition in that order. There would be no reasonable jurisdictional dispute if the court then, upon notice, entered a subsequent order releasing Peposhi if he was not provided with a bond hearing in that period.

Here, Peposhi alleges that he did not receive a bond hearing in accordance with the first condition, i.e., in accordance with the memorandum's reference to a neutral IJ conducting a hearing with the burden of proof being placed on the government to prove danger or flight risk by clear and convincing evidence. Peposhi, 2026 WL 1433086 at *5. The court sees no reason why it would lack jurisdiction to consider whether the first condition was satisfied by the government.

Second, despite its jurisdiction-stripping language, Section 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). The Third Circuit has also never used Section 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received."); Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011) ("[Section 1226(e) ] does not limit habeas jurisdiction over constitutional claims or questions of law.")). Further, in non-precedential opinions, the appellate court has recognized such jurisdiction. Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

6

Peposhi's motion to enforce can be distilled down to an argument that he did not receive a constitutionally appropriate bond hearing before a neutral IJ. Therefore, under both strands of authority, the court has jurisdiction to consider Peposhi's motion to enforce on its merits.[2]

**Analysis**

With the motion to enforce, Peposhi asserts that he received "a one line, pro forma denial" and "the IJ who issued this denial regularly issues one line, pro formal denials for [h]abeas-ordered [b]ond [h]earings." Id. In support, he attaches orders issued by IJ Combs in other cases. (Doc. 9-1). He asks rhetorically whether the IJ has pre-loaded one-line denials ready to enter into a template order. (Doc. 9 at 3).

"There are three pillars of a fair hearing: (1) the IJ engages in fact-finding based on the record made at a hearing and disclosed to the noncitizen; (2) the noncitizen has the opportunity to make arguments and present evidence on his/her own behalf; and (3) the IJ makes an individualized determination of the

---

[2] The government also offers up the petitioner's failure to exhaust administrative remedies as a bar to hearing the motion. The motion is a request for the court to review the IJ's compliance with its previous conditional habeas order. Thus, there would be nothing left for the petitioner to exhaust. A.D. v. Oddo, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026). In any event, the exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). Peposhi has been detained under Section 1226(a) for over six months. Therefore, any exhaustion requirement is excused.

noncitizen's claims." <u>B.C. v. Att'y Gen. United States</u>, 12 F.4th 306, 313 (3d Cir. 2021) (citing <u>Chong v. Dist. Dir., I.N.S.</u>, 264 F.3d 378, 386 (3d Cir. 2001)).

Despite the petitioner's arguments, those three pillars bear weight in this case.  Here, the IJ did more than issue a one-line order; he conducted a full hearing. (Doc. 11-9, Hearing Transcript).  At that hearing, petitioner was represented by counsel of his own choosing.[3] <u>See</u> <u>Goldberg v. Kelly</u>, 397 U.S. 254, 270–71 (1970) (quoting <u>Powell v. Alabama</u>, 287 U.S. 45, 68–69 (1932) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.").  A complete record of the proceedings was created.[4] <u>See</u> <u>Marincas v. Lewis</u>, 92 F.3d 195, 203 (3d Cir. 1996) ("two of the most basic of due process protections [are] a neutral judge and a complete record of the proceeding.").

The IJ reviewed the documentary evidence with the parties before the hearing, including a packet of materials submitted on Peposhi's behalf.  During

---

[3] Petitioner's counsel was able to secure a 48-hour adjournment of the bond hearing. (Doc. 11-7).

[4] The court also considered whether the government failed to provide Peposhi with an interpreter.  <u>See</u> Marincas, 92 F.3d at 204 ("Courts have recognized the importance of a competent translator to ensure the fairness of proceedings to applicants who do not speak English."); <u>B.C. v. Att'y Gen. United States</u>, 12 F.4th 306, 314 (3d Cir. 2021) ("It is well established that the provision of an interpreter is a 'minimum' requirement of a fair hearing for asylum applicants who have limited English proficiency.").  The record reflects that petitioner's counsel waived an Albanian interpreter at the first proceeding, which was adjourned, and then did not raise the issue during the second proceeding. (Docs. 11-7, 11-9).  Peposhi also did not raise this issue in his motion to enforce. Consequently, the court deems this issue waived for the purposes of further relief related to the bond hearing.

the initial moments of the bond hearing, DHS counsel ensured the IJ was aware of the court's prior decision placing the burden on the government to prove danger or risk of flight by clear and convincing evidence. Thus, the IJ was aware that he was to apply a different standard than the typical custody determination hearing for detainees held under 8 U.S.C. § 1226(a).

The IJ also considered evidence regarding the petitioner's flight risk on a current basis. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended, (Dec. 30, 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption."). That is, the government presented its position on flight and articulated several reasons for continued detention. Counsel for DHS argued that the petitioner did not have any family ties in the United States. DHS counsel referenced that the petitioner was arrested for attempting to break the immigration laws of other nation-states. That is, the petitioner's I-589 asylum application indicated that he had been deported from Russia and then attempted to travel to the United Kingdom without obtaining a visa. DHS counsel also argued that the petitioner's immigration sponsor evidence was suspect because the proffered sponsor lived in Texas and the petitioner had never lived in Texas.

9

After DHS presented its arguments, and although he did not bear any burden at the hearing, Peposhi's counsel was given an opportunity to make arguments on his client's behalf. And petitioner's counsel did just that. He emphasized that Peposhi was attempting to seek asylum in Russia and the United Kingdom. He argued that the petitioner had complied with his ICE reporting requirements prior to being detained and was detained at one of these check-ins. Looking at the proceedings from a due process standpoint, petitioner's counsel was permitted to make his points at the bond hearing.

Thereafter, the IJ went off the record for the stated purpose to re-review the documents submitted. The IJ then stated at the conclusion of the hearing:

> The court knows that the respondent does have a fixed address in Philadelphia, and his landlord at that address is also his employer. A letter related to that was submitted. There are also sponsor documents related to the respondent's, uh, LPR friend who is willing to pay the respondent's bond. The court does have concerns about the respondent's case. Um, the respondent does not appear to have family ties in the United States. The respondent does have a timely filed I-589 application for asylum. Although with review, it seems, uh, very speculative at best. We're not here to litigate the I-589 today, but it is a consideration when considering the speculative nature of relief, uh, and the risk of flight that would impose because ultimately flight risk is not just coming to all of your hearings, but also complying with any, uh, eventual order in your case, even if it is not the order that you were hoping to obtain. The court notes that the respondent did enter the United States without inspection, which does show a disregard for immigration laws, and the court does note that the respondent, it appears, has

10

attempted or successfully illegally entered at least two other countries being the United Kingdom and Russia.

The court does take, uh, what counsel had mentioned about the respondent being RORed looks like due to bed space on the I-213 and him showing up to his appointments. Um, and the court does weigh that along with all of the other factors in this case. The court has concerns that the respondent, it appears, has never been harmed and has been in and out of Albania since these threats began in 2015, um, at least in 2020 and 2021, 2024.

(Doc. 11–9).

Accordingly, at the conclusion of the hearing, the IJ issued an on-the-record decision explaining the individualized basis for his ruling, i.e., a lack of family ties, the petitioner's prior violation of the immigration laws of the United Kingdom and Russia, and issues with the petitioner's asylum claim, including his return to Albania in 2020, 2021, and 2024 without harm.  Peposhi thus received a decision grounded in the evidentiary record and sufficiently reasoned to permit this court to determine whether the hearing complied with due process.

To be sure, Peposhi disagrees with the IJ's ultimate conclusions or the weight that the IJ placed or did not place on certain evidence.  But that disagreement does not establish that the hearing failed to comply with due process.  Nor does it authorize this court to reweigh the evidence underlying the IJ's flight-risk determination. Borbot, 906 F.3d at 279 (discussing 8 U.S.C. § 1226(e)).

11

For his part, Peposhi included similarly-worded orders from other cases in an effort to show IJ Combs's bias or partiality. Nonetheless, four or five matters are a small sample size. Furthermore, the court is not aware of the details of those matters or the arguments presented by the parties in those cases. Absent any other evidence from Peposhi, the court must conclude that his bond hearing was conducted by a neutral and impartial IJ and satisfied due process. From the record supplied, the IJ did not step into the role of the attorney for the government, nor did he advocate for the government's position. See Abulashvili v. Att'y Gen. of U.S., 663 F.3d 197, 207 (3d Cir. 2011); Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003). Rather, he engaged in fact-finding based on the record made by DHS counsel and Peposhi's counsel after hearing their arguments and made an individualized determination as to the petitioner's flight risk.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that the petitioner's motion to enforce, (Doc. 9), is **DENIED**, his motion to expedite, (Doc. 12), is **DISMISSED** as moot, and the Clerk of Court is directed to close this case.

Date: 7/23/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court